UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ERIC WOLD,

        Plaintiff,

v.                                        **MEMORANDUM OF LAW AND ORDER**
                                                  **CIVIL FILE NO. 08-1468 (MJD/SRN)**

DELL FINANCIAL SERVICES, L.P.,

        Defendant.

Thomas J. Lyons, Jr. and Trista M. Roy, Consumer Justice Center PA, Counsel for Plaintiff.

Charles F. Webber and Christina Rieck Loukas, Faegre & Benson LLP, Counsel for Defendant.

## I. INTRODUCTION

This case came before the Court on Defendant Dell Financial Services' ("DFS") Motion to Compel Arbitration and Stay Proceedings. [Docket No. 5.] DFS brings its motion under the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. The Court heard oral argument on October 31, 2008.

## II. DISCUSSION

### a. Factual Background

1

On July 2, 2002, Plaintiff Eric Wold purchased a Dell computer over the telephone. (Wold Aff. ¶ 2.) According to the Complaint, in order to finance the purchase of the computer, Wold enrolled in a consumer credit agreement with DFS. (Compl. ¶ 4.) Wold paid off the account in full before May 10, 2004. (Id. ¶ 7.) At some point prior to May 10, 2004, DFS began reporting to the national credit agencies that Wold's account was included in a bankruptcy. (Id. ¶ 8.) Wold, however, has never filed for bankruptcy. (Id. ¶ 6.) On May 10, 2004, Wold alerted DFS to the mistake and DFS stated that the account would be correctly reported to the credit agencies immediately. (Id. ¶ 11.) Despite Wold's continued monitoring of the situation, DFS intermittently reported the incorrect information over the next few years. (Id. ¶¶ 12-15.)

When a consumer applies over the phone for financing through DFS, DFS's standard business practice is for the telephone representative to notify the consumer that DFS will mail him or her the full credit agreement for the account. (Kirkwood Decl. ¶¶ 4-5.) The representative also tells the consumers that they have 24 hours to review the agreement and reject the terms if they desire to do so. (Id. ¶ 5) The DFS representative also, among other things, offers to fax or email a copy of the credit agreement to the consumer. (Id.) Within 48 hours of approving a credit application, it is DFS's policy to send a "Welcome Package" to

the consumer that includes a copy of the credit agreement. (Id.) The standard agreement includes an arbitration clause that states in part:

> **YOU ACKNOWLEDGE THAT IF A CLAIM ARISES YOU MAY BE REQUIRED TO SETTLE THE CLAIM THROUGH ARBITRATION AND ARE GIVING UP YOUR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY . . . .**

(Id. Ex. A.) The relevant arbitration clause provides that it survives termination of a consumer's credit account and the repayment of all amounts that he or she owes on the account. (Id.)

### b. The Dispute

The Complaint alleges two causes of action: violation of the Fair Credit Reporting Act; and credit defamation. Wold seeks a jury trial on these two claims.

On July 14, 2008, DFS filed a Motion to Compel Arbitration and Stay Proceedings [Docket No. 5]. In support of its motion, DFS argues that Wold is a party to the arbitration clause of its standard credit agreement. In response, Wold claims that he never received the credit agreement containing the arbitration clause and that, if he did, he would have never agreed to the terms of the credit. Because of his claim that he did not receive and assent to the arbitration clause of DFS's standard credit agreement, Wold argues that there is

3

no valid arbitration agreement between himself and DFS. In addition, Wold argues that the arbitration agreement is unenforceable because it is unconscionable.

### c. Legal Standard

Arbitration is a matter of contract between the parties, and a court can only compel arbitration of claims that the parties have agreed to arbitrate. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). There is a "strong federal preference toward enforcing arbitration agreements." Johnson v. Hubbard Broad., Inc., 940 F. Supp. 1447, 1453 (D. Minn. 1996); see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The validity of an arbitration agreement is determined by state contract law. See Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001).

A court asked to stay proceedings and compel arbitration must ask two questions: 1) whether an arbitration agreement exists; and 2) whether the dispute falls within the terms of the arbitration agreement. See Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001). Once a court "concludes that the parties have reached such an agreement, the FAA compels judicial enforcement of the arbitration agreement." Id. Wold does not challenge whether the dispute falls within the terms of the arbitration agreement and so DFS does not address

4

that issue in its brief.  (See Def.'s Reply Mem. at 3, n.1.)  In either event, the Court finds that the dispute clearly falls within the terms of the arbitration agreement.

### d.  Whether an Arbitration Agreement Exists

In order to establish whether a valid arbitration agreement exists, courts apply ordinary state law principles governing the formation of contracts.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  The terms of the standard DFS arbitration agreement dictate that Utah law is to be applied to any claims arising under the agreement.  (See Kirkwood Decl. Ex. A.)  Utah law provides:

> A credit agreement is binding and enforceable without any signature by the party to be charged if:
>
> (i) the debtor is provided with a written copy of the terms of the agreement;
>
> (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and
>
> (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e) (2008).

Wold argues that Utah law should not apply to his claims and the arbitration agreement is invalid because he never received the agreement.  While he does admit that he received a "Welcome Package" from DFS, Wold says that

the credit agreement was not included in those materials. Because of his claim that he never received the agreement, Wold argues that he cannot be held to the contract.

Courts routinely enforce so-called "shrinkwrap" accept-or-return arbitration agreements. See Seibert v. Amateur Athletic Union of U.S., Inc., 422 F. Supp. 2d 1033, 1039-40 (D. Minn. 2006); see also Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1150 (7th Cir. 1997) (finding a shrinkwrap arbitration clause to be valid and enforceable). In Hill, the plaintiff ordered a Gateway computer over the phone. The computer arrived with a list of terms and conditions that included an arbitration clause providing that the terms and conditions applied unless Hill returned the computer within thirty days. Hill kept the computer and later sued Gateway regarding the computer's performance. Gateway moved to compel arbitration. The district court denied the motion on the ground that the arbitration clause did not bind Hill because he did not sign it. The Seventh Circuit Court of Appeals vacated the district court's ruling, holding that the arbitration clause was enforceable against Hill because "[a] vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing

the acts the vendor proposes to treat as acceptance." Hill, 105 F.3d at 1149

(citations omitted).

Wold argues that the facts in Hill are distinguishable from the facts in his case. In Hill, there was no dispute that the plaintiff received a copy of the contract terms that included the arbitration clause. Here, Wold denies ever having received a similar document. In addition, Wold argues that case law in favor of enforcing "accept or return" agreements necessarily requires receipt of the agreement and that Wold never received the agreement in this case.

The essence of the dispute between the two parties, then, is whether the Court must be satisfied that Wold actually received the documents that DFS claims it sent as a matter of business practice but that Wold claims he never received. While Wold argues that he cannot be bound to an agreement that he never received, the Court finds that DFS is not required to prove that Wold actually received the credit agreement. The combination of Wold's performance of the contract (paying off his debt to DFS) with a presumption that "a properly mailed document is received by the addressee," Davis v. U.S. Bancorp, 383 F.3d 761, 766 (8th Cir. 2004), leads this Court to find that a valid arbitration agreement did exist between Wold and DFS. The presumption of receipt is triggered by "circumstantial evidence, including testimony by someone familiar with

7

company procedures and practices that the letter was sent." Id. DFS has provided the Court with a declaration made by Stuart Kirkwood, Revenue Services Manager for DFS, that the company has a policy of sending the credit agreement in its welcome package. (Kirkwood Decl. ¶ 4.) And Wold himself has admitted that he received the welcome package. (Wold Aff. ¶ 4.)

In sum, DFS has created a rebuttable presumption that Wold received the arbitration agreement, and Wold has failed to overcome that presumption. Denial of receipt of an agreement with an arbitration clause is not sufficient to overcome the presumption of receipt. See Discover Bank v. Vaden, 489 F.3d 594, 607 (4th Cir. 2007); see also Pleasants v. Am. Express Co., No. 4:06-cv-1516, 2007 WL 2407010 at *3 (E.D. Mo. Aug. 17, 2007) (compelling arbitration where plaintiff did not recall receiving arbitration provision but admitted to receiving other portion of mailing customarily sent with the arbitration provision). Wold has presented the Court with no evidence that DFS behaved differently towards him than it does in the normal course of business towards its other debtors.

### e. Unconscionability

Wold argues that, even if the Court finds that he assented to the arbitration clause by keeping and paying for the computer, the arbitration clause is unconscionable. (Pl.'s Mem. in Opp. at 8-9.) First, Wold argues that the contract

is substantively unconscionable because its terms are grossly unfair.  Second, Wold argues that the contract is procedurally unconscionable because it is based on a situation where one party had superior bargaining power and presented the contract on a take-it or leave-it basis.  See Ronwin v. Smith Barney Harris Upham & Co., 807 F. Supp. 87, 89 (D. Neb. 1992).  In his submissions to the Court, Wold does not adequately respond to DFS's argument that courts have routinely rejected challenges to arbitration clauses on unconscionability grounds.  See, e.g., Siebert v. Amateur Athletic Union of the United States, Inc., 422 F. Supp. 2d 1033 (D.Minn. 2006); Hunt v. Up North Plastics, Inc., 980 F. Supp. 1046, 1050-51 (D. Minn. 1997).  In addition, "[t]he use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision.  To be invalid, the provision at issue must be unconscionable."  Webb v. R. Rowland & Co., 800 F.2d 803, 807 (8th Cir. 1986).

For the purposes of Wold's unconscionability argument, it makes no difference if the Court were to apply Utah law, which DFS argues is appropriate, or Minnesota law, which Wold argues is appropriate.  Under both Utah and Minnesota law, a contract is unconscionable if no clear-thinking person would make it, or if no such person would accept it.  See, e.g., Kauffman Stewart, Inc. v. Weinbrenner Shoe Co., 589 N.W.2d 499, 502 (Minn. Ct. App. 1999); Res. Mgmt.

Co. v. Weston Ranch and Livestock Co., 706 P.2d 1028, 1041 (Utah 1985).  The Court finds that the fact that arbitration agreements are preferred as a matter of national policy creates a presumption that they are generally reasonable as a matter of contract law.  See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

Wold argues that the arbitration clause at issue in this case is unconscionable because, if enforced, it would require him to take his federally-protected claims to arbitration rather than getting the opportunity to bring them in a federal court.  This argument overlooks the reality that courts across the country have enforced arbitration clauses in connection with claims brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.  See e.g., Heiges v. JP Morgan Chase Bank, N.A., 521 F. Supp. 2d 641 (N.D. Ohio 2007) (compelling arbitration of FCRA claims under arbitration clause in credit card agreement).

### III.   HOLDING

Even though the Court empathizes with Wold's position as a consumer who dutifully paid off his debt to DFS and who, after paying his debt, then received the unwelcomed reward of a negative entry on his credit report, national policy is strongly in favor of enforcing arbitration agreements.  In

addition, Wold's claim that he never received the credit agreement that included the arbitration clause is not persuasive when balanced against both his admission that he received the "Welcome Package" as well as DFS's customary business practice of including the credit agreement in all of its welcome packages.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Dell Financial Services' Motion to Compel Arbitration and Stay Proceedings [Docket No. 5] is **GRANTED**.  The claims in this case are subject to arbitration under the parties' agreement and shall be resolved through arbitration at the instance of either party to this action.

2. All further proceedings in this action are **STAYED** pending resolution of the claims through arbitration or other non-judicial means.

Date:  February 17, 2009
                                                    <u>s/ Michael J. Davis</u>
                                                    Michael J. Davis
                                                    Chief Judge
                                                   United States District Court